IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

David Banks,                          :

    Plaintiff,                    :

  v.                                  :   Case No. 2:05-cv-0713

Mrs. Rees, (Medical Director),  :   JUDGE MARBLEY
et al.,
                                                          :

    Defendants.

### REPORT AND RECOMMENDATION

Plaintiff, David Banks, a state prisoner, filed a two-count complaint against defendants, Lucinda Rees, the former medical director at the Madison Correctional Institution, James McWeeney, M.D., a physician at MCI, Judith Royer, M.D., a former contract physician at MCI, Mrs. Workman, the institution inspector at MCI, Mrs. Knox, the assistant institution inspector at MCI, and Linda C. Coval, the deputy chief inspector for the Ohio Department of Rehabilitation and Correction. Mr. Banks' first claim for relief, presumably brought pursuant to 42 U.S.C. §1983, alleges that the defendants, under color of state law, deprived him of the rights, privileges, and immunities secured by the Eighth and Fourteenth Amendments to the United States Constitution, including but not limited to, the right to adequate medical care and the right to be free from cruel and unusual punishment. Mr. Banks' second claim asserts that the defendants have illegally imposed a three-dollar co-pay on him for the same repeated visits and the same injury in violation of the pre-1996 version of Ohio Rev. Code §5120.021.

Ms. Rees was subsequently dismissed as a defendant on September 14, 2007, for want of service of process. Presently before the Court is a motion for summary judgment filed by the

remaining defendants. For the following reasons, it will be recommended that the defendants' motion be granted with respect to the plaintiff's §1983 claim and that the Court decline to exercise supplemental jurisdiction over his state-law claim.

## I.

Fed. R. Civ. P. 56(c) provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)(emphasis in original); Kendall v. The Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248. The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. Lashlee v. Sumner, 570 F.2d 107, 111 (6th Cir. 1978). Therefore, summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is,...[and where] no genuine issue remains for trial,...[for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467 (1962); accord,

County of Oakland v. City of Berkley, 742 F.2d 289, 297 (6th Cir. 1984).

In making this inquiry, the standard to be applied by the Court mirrors the standard for a directed verdict. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Anderson, 477 U.S. at 250.

> The primary difference between the two motions is procedural: summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on the evidence that has been admitted. Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 745, n. 11 (1983). In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

Id. at 251-52. Accordingly, although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules which are designed "to secure the just, speedy and inexpensive determination of every action." Celotex, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970) (footnote omitted); accord, Adams v. Union Carbide Corp., 737 F.2d 1453, 1455-56 (6th Cir.), cert. denied, 469 U.S. 1062 (1984). Inferences to be drawn from the underlying facts contained in such materials must be considered in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam); Watkins v. Northwestern Ohio Tractor Pullers Ass'n, Inc., 630 F.2d 1155,

3

1158 (6th Cir. 1980).  Additionally, "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. <u>Adickes</u>, 398 U.S. at 157-60; <u>Smith v. Hudson</u>, 600 F.2d 60, 65 (6th Cir.), <u>cert. dismissed</u>, 444 U.S. 986 (1979).

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. <u>Celotex</u>, 477 U.S. at 322.  The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. <u>Anderson</u>, 477 U.S. at 252.  As is provided in Fed. R. Civ. P. 56(e):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon  the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule,  must set forth specific facts showing that there is a genuine issue for trial.  If he does not so respond, summary judgment,  if appropriate, shall be entered against him.

Thus, "a party cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion made against him." <u>First National Bank of Arizona v. Cities Service Co.</u>, 391 U.S. 253, 289 (1968) (footnote omitted).

III.

The defendants filed the affidavits of Karen Stanforth, the current healthcare administrator at MCI, and Linda C. Coval, the deputy chief inspector for ODRC, in support of their motion for summary judgment.  Ms. Stanforth's affidavit details Mr. Banks' medical history and course of treatment at MCI and attaches

certain records of such treatment.  It is offered to show that the defendants were not "deliberately indifferent" to Mr. Banks' medical needs, the standard for which is set forth below.  Ms. Coval's affidavit addresses the issue of whether Mr. Banks has exhausted his administrative remedies in regard to his co-pay claim.  Mr. Banks did not submit any affidavits or other evidentiary materials permitted by Fed. R. Civ. P. 56(c), but instead relies on various legal arguments and certain inferences he would like the Court to make based on the defendants' purported acknowledgment of his injuries and undertaking of required surgeries only after this lawsuit was commenced.

On May 9, 2003, Mr. Banks slipped on a wet floor in the kitchen or dining room area at MCI.  Complaint ¶1, Plaintiff's Motion in Opposition (#72) p.3.  After complaining of injuries to his neck, shoulder, arm, and wrist, he was examined by a nurse in the prison's infirmary who found no visual deformity.  Complaint ¶3, Motion in Opposition, p.3, Stanforth Aff. ¶6(a).  Because Mr. Banks was already taking prescribed doses of Tylenol and Motrin, the nurse further treated him by giving him an analgesic balm.  Id.  The following day, x-rays were taken of the injured areas, including Mr. Banks' left shoulder, which were reported as negative for any broken bones.  Complaint ¶5, Stanforth Aff. ¶6(b).  Mr. Banks' current pain medications were continued.  Id.  Over the next several months, Mr. Banks continued to be seen by medical personnel at MCI and his doctors added or increased pain medications and prescribed additional anti-inflammatory medications and muscle relaxants.  Stanforth Aff. ¶6(c).  During this time period and in succeeding months, Mr. Banks filed several grievances regarding his medical treatment, none of which were resolved to his satisfaction.  Complaint ¶¶7-25.

On October 7, 2003, an electromyogram was ordered of Mr. Banks' left upper extremity, and his medications were increased.  Stanforth Aff. ¶6(e).  On December 31, 2003, a magnetic resonance

image was taken and, based upon the results, Mr. Banks was referred to orthopedics in January 2004 for a left rotator cuff tear.  Stanforth Aff. ¶6(e).  Additional pain medication was prescribed and he was referred for physical therapy to strengthen his rotator cuff and improve his range of motion.  Id.

In March 2004, Mr. Banks received a cortisone injection. Stanforth Aff. ¶6(f).  Pain and anti-inflammatory medication was maintained and physical therapy continued.  Id.  A consultation report prepared July 10, 2004, and attached to Ms. Stanforth's affidavit, notes great improvement in Mr. Banks' range of motion following the cortisone injection.  Id.; Exhibit A-2.

During the next few months, Mr. Banks continued to be seen by medical personnel and kept on his medications.  He received a second EMG and a wrist support with tension strap, and was again referred to orthopedics.  Stanforth Aff. ¶6(g).  In September 2004, Mr. Banks was referred for another round of physical therapy.  Stanforth Aff. ¶6(h).  He was maintained on his medications and received a soft restraint evaluation.  Id.  In November 2004, Mr. Banks underwent an EMG of his lower extremity and x-rays of his lumbar spine, pelvis, and abdomen.  Id.  The orthopedic consults continued.  Id.

In June 2005, another MRI was ordered along with x-rays of Mr. Banks' left hip and pelvis.  Stanforth Aff. ¶6(j).  The following month he participated in physical therapy and underwent a three-phase bone scan.  Id.  In August 2005, a surgical consultation took place (after Mr. Banks filed this lawsuit) and he was issued a splint.  Id.  In October 2005, he received a neurosurgery consult.  Id.  Following an orthopedics consult in November 2005 for his left shoulder, Mr. Banks' medication was increased over the next two months.  Stanforth Aff. ¶6(k).

In February 2006, orthopedics recommended surgery for Mr. Banks' left rotator cuff.  Stanforth Aff. ¶6(l).  Arthroscopic surgery took place on February 22, 2006, and a copy of the

6

surgeon's report is attached to Ms. Stanforth's affidavit.  Id.; Exhibit A-3.  Mr. Banks continued to receive his medications post surgery, as well as follow-up care and physical therapy.  Id.  In April 2006, a lumbar spine x-ray was taken, and Mr. Banks returned to physical therapy.  Stanforth Aff. ¶6(m).

Mr. Banks underwent a second surgery on his shoulder in April 2006 - a left distal clavicle excision - followed by orthopedic aftercare and medication maintenance.  Stanforth Aff. ¶6(n).  In August 2006, another EMG was ordered, and Mr. Banks received another orthopedics consult.  Stanforth Aff. ¶6(o).  According to Ms. Stanforth's affidavit, the consult report indicates that Mr. Banks' range of motion is better than it has been and is almost symmetrical; however, the report is not attached.  Id.  Lastly, Mr. Banks was referred to the pain clinic in December 2006 for pain management.  Stanforth Aff. ¶6(p).

IV.

To establish an Eighth Amendment violation, a prisoner must show that he or she has a serious medical condition and that the defendants displayed a deliberate indifference to his or her health.  Estelle v. Gamble, 429 U.S. 97 (1976); Wilson v. Seiter, 501 U.S. 294 (1991).  This formulation has both a subjective and an objective component.  Objectively, the medical condition at issue must be "serious" as opposed to "trivial," "minor," or "insubstantial."  Subjectively, the defendants accused of violating the Eighth Amendment must have acted with a state of mind that can accurately described as "deliberate indifference."  Each of these components requires some elaboration.

It is not always easy to distinguish serious medical conditions from those that are not sufficiently substantial to implicate the Constitutional prohibition against cruel and unusual punishment, and the facts concerning the seriousness of an inmate's condition are frequently in dispute.  In evaluating such claims, courts have given weight to a variety of factors,

including whether the condition is one that a doctor or other health care professional would find worthy of treatment, whether it significantly affects everyday activities, and whether it causes (or, if left untreated, has the potential to cause) chronic and substantial pain. See Chance v. Armstrong, 143 F.3d 698, 702-03 (2d Cir. 1998); see also Harrington v. Grayson, 811 F.Supp. 1221, 1226-28 (E.D. Mich. 1993)(focusing on the severity of the condition, the potential for harm if treatment is delayed, and whether such a delay actually caused additional harm).

Under some circumstances, expert testimony may be needed to establish the seriousness of a medical condition, particularly if the inmate's claim is founded upon an unreasonable delay in treatment. See Napier v. Madison County, Ky., 238 F.3d 739,742 (6th Cir. 2001). In other cases, however, when the condition does not involve "minor maladies or non-obvious complaints of a serious need for medical care," but rather "an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers," expert testimony is not essential to a finding that a serious medical condition is present. Blackmore v. Kalamazoo County, 390 F.3d 890, 898 (6th Cir. 2004).

As to the subjective element, in Farmer v. Brennan, 511 U.S. 825, 839 (1994), the Court adopted "subjective recklessness as used in the criminal law" as the appropriate definition for deliberate indifference. It held that "a prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. . . ." Id. at 837. Officials must be aware of facts from which they could conclude that a substantial risk exists and must actually draw that conclusion. Id. Prison officials who know of a substantial risk to the health or safety of an inmate are free from liability if "they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

Because an Eighth Amendment medical claim must be

premised on deliberate indifference, mere negligence by a prison doctor or prison official with respect to medical diagnosis or treatment is not actionable under 42 U.S.C. §1983.  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Brooks v. Celeste, 39 F.3d 125 (6th Cir. 1994).

    The defendants do not argue here that Mr. Banks has not met the objective component of an Eighth Amendment violation.  The Court, therefore, will assume solely for the purposes of this motion, that Mr. Banks has demonstrated that the injuries he sustained in his fall in May 2003, particularly the injury to his left shoulder, constitute a serious medical condition.  The Court will, then, turn to the other relevant inquiry, which is whether a reasonable trier of fact could conclude that the defendants were deliberately indifferent to this serious medical condition.

    The medical records show that Mr. Banks received medical treatment from the date of his accident forward.  The treatment included pain medication, anti-inflammatories, muscle relaxants, topical analgesics, and a cortisone injection, as well as several rounds of physical therapy.  Mr. Banks also underwent numerous diagnostic procedures, including x-rays, MRIs, EMGs, and a three-phase bone scan.  He was seen repeatedly by orthopedic specialists during the remainder of 2003 and throughout 2004 and the first half of 2005.  All of this occurred prior to the filing of his complaint in this Court.  Accepting Mr. Banks' inference that he would not have received surgical intervention but for this lawsuit as true, the Court, nevertheless, concludes that no reasonable trier of fact could find that the defendants disregarded an excessive risk to Mr. Banks' health and safety.

The defendants responded to his injuries and although the course of treatment was more conservative than he would have liked, Mr. Brown has not shown that their response was unreasonable. Even if the defendants' failure to pursue surgical alternatives until February 2006 fell below a reasonable standard of care (something the Court has not been called upon to determine) it would, at most, constitute medical malpractice. Medical malpractice does not constitute a valid claim of medical mistreatment under the Eighth Amendment. See Chance,143 F.2d at 703 ("It is well-established that mere disagreement with the proper treatment does not create a constitutional claim"). There is no evidence that the defendants, through any alleged actions or omissions, caused Mr. Banks to suffer unnecessarily. Accordingly, they could not have formed the requisite subjective intent under Farmer v. Brennan, supra, for an Eighth Amendment violation.

In addition to his claim under the Eighth Amendment, Mr. Bank apparently attempts to state a claim under the Due Process Clause of the Fourteenth Amendment. Because "the Due Process Clause affords [prisoners] no greater protection than does the Cruel and Unusual Punishment Clause," Whitley v. Albers, 475 U.S. 312, 327 (1986), the claims are redundant, and this Court need only consider Mr. Banks' claim within the context of the Eighth Amendment. See Lee v. Baker, 181 F.3d 101 (table), 1999 WL 282652 at *1 (6th Cir. Apr. 30, 1999).

The above findings eliminate the need to determine whether there was any personal involvement by defendants Knox, Royer, and McWeeney in the alleged deprivation of Mr. Banks' Eighth Amendment rights for purposes of 42 U.S.C. §1983. The findings similarly negate any need to entertain the defendants' contention, raised for the first time in their reply brief, that they have been sued in their official capacities only and that, consequently, Mr. Banks' claims against them are barred by the Eleventh Amendment. Lastly, these findings also make it

10

unnecessary to consider the defendants' argument that they are entitled to qualified immunity under Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982), because their actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." See Bykowski v. City of Akron, 326 F.3d 702, 708 (6th Cir. 2003) (court did not reach "clearly established" prong of qualified immunity where officials did not violate plaintiff's due process rights).

V.

Mr. Banks' co-pay claim is a state-law claim purportedly arising under the pre-1996 version of Ohio Rev. Code §5120.021. Federal courts have supplemental jurisdiction to hear state-law claims if those claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367(a); see also United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966). A federal court, however, has the power to exercise discretion in hearing pendent state-law matters. 28 U.S.C. §1367(c). Specifically, if a plaintiff's federal claims are dismissed before trial, then any state-law claims brought by the plaintiff are also appropriately dismissed. Id.; Gibbs, 383 U.S. at 726-27; Musson Theatrical, Inc. v. Federal Express Corp., 89 F.3d 1244, 1254-55 (6th Cir. 1996)("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed").

If this Report and Recommendation is adopted by the District Court, summary judgment will be granted on Mr. Banks' sole federal claim. Because there is no substantial interest in judicial economy that would be served by deciding Mr. Banks' state claim, the Court should decline to exercise supplemental jurisdiction in this case.

VI.

Based on the foregoing, it is recommended that the defendants' motion for summary judgment (#66) be granted with respect to the plaintiff's first claim for relief and that the plaintiff's second claim be dismissed without prejudice.

PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge